(No. 15918.—Decree affirmed.)

ALEX MAULE et al. Appellants, vs. JAMES MAULE et al. Appellees.

*Opinion filed April 14, 1924.*

1. EVIDENCE—*when husband may testify in a suit to set aside wife's deed to him.* In a suit by a deceased wife's heirs to set aside a deed to her husband re-conveying property which he had conveyed to her, the defendant husband is competent to testify in his own behalf in regard to matters which occurred after the death of the wife and to conversations testified to by the complainants in which the wife made claim to the property in her husband's presence, and to such matters as were testified to by witnesses not parties to the record nor parties in interest, relative to conversations or admissions made by the husband in the absence of the wife.

2. DEEDS—*when finding that deed was delivered is justified—burden of proof.* In a suit by a deceased wife's heirs to set aside a deed executed by her in favor of her husband, evidence that the deed was formally executed and was found in the possession of the grantee after the death of his wife is sufficient, in the absence of contrary proof, to justify finding that the deed was delivered, and the burden is upon the complainants to show by clear and positive proof that the deed was not delivered.

3. SAME—*delivery depends upon intention manifested by conduct of parties and circumstances of transaction.* Whether a deed was delivered so as to take effect, according to its terms, as a present conveyance of title depends upon intention, and this must be determined from the words and acts of the parties in connection with the circumstances attending the transaction.

4. SAME—*a deed found in grantee's possession is presumed to have been delivered.* Where a deed duly executed is found in the hands of the grantee the presumption of delivery arises, and this presumption can be overcome only by clear, convincing evidence.

APPEAL from the Circuit Court of St. Clair county; the Hon. LOUIS BERNREUTER, Judge, presiding.

McHALE & McHALE, and LOUIS P. ZERWECK, for appellants.

TECKLENBURG & KRUGER, for appellees.

312—9

Mr. JUSTICE DUNN delivered the opinion of the court:

Sarah Maule died on May 12, 1923, leaving her husband and eight children surviving her. On May 28 a deed purporting to have been executed by her on November 21, 1905, conveying to John Maule, her husband, certain real estate in St. Clair county, was filed for record. On August 30 five of the heirs filed a bill in the circuit court against the other three and John Maule to set aside the deed on the ground that it had not been executed and delivered. George Keck was made a defendant on the allegation that he had filed a bill for the specific performance of an alleged contract with John Maule for the sale of a part of the premises, and the bill prayed an injunction against the prosecution of the bill by Keck and against the conveying, incumbering or selling of the premises by Maule. The bill was dismissed on a hearing and the complainants have appealed.

The greater part of the evidence is as to the genuineness of the signature of Mrs. Maule to the deed. The argument of the appellants on this question consists of the following statement: "We submit that a careful reading of the evidence in this record shows that while the signature of Sarah Maule to the alleged deed resembles her signature, that the same is not, in fact, her true and genuine signature." The original deed and other instruments bearing the genuine signature of Sarah Maule have been certified to us. An examination of these signatures and a careful reading of the testimony of the witnesses on this question satisfy us that the judgment of the chancellor, who saw the witnesses and heard them testify, cannot be held to be contrary to the evidence.

The grantor at the time of her death, on May 12, was seventy-three years old and the grantee about eighty-seven. They had lived on the property as long as their son Alexander, who was forty-six years old, could remember. She

was a second wife, and he had conveyed the property to her on January 5, 1894. There were children of the first marriage, also.

No evidence was introduced in chief by the complainants of the circumstances under which the deed was executed, but their case was confined to evidence, much of which was given by the complainants themselves, to show that the signature attached to the deed was not the signature of Sarah Maule, and statements made since 1905 by Sarah Maule in the presence of John Maule to the effect that the place was her home or property or homestead or belonged to her, and she did not intend that it should be disposed of or sold unless the purchase price should be paid to her or until she had another home of her own. In response to such statements Maule acquiesced either in words or by silence, or said that some day she would find out to whom the property belonged, and when complainants closed their case on the question of delivery it appeared only that the property had been the homestead of John Maule and Sarah, his wife, for many years; that Maule had conveyed it to his wife in 1894; that after 1905 she had frequently stated that it was her property, her home, her homestead, and she did not propose that it be sold unless the purchase money were paid to her or until she had another home in place of it; and that the deed here questioned was filed for record by Maule, who was the grantee, after the death of his wife, who was the grantor.

The deed bore the certificate of acknowledgment of Edmund Burke, as notary public, in the usual form, dated November 21, 1905, and Burke testified that in 1905 he was a lawyer practicing in Belleville, and prepared the deed upon the instructions of John Maule and took it to his home for execution by Mrs. Maule, explained it to her for the reason that he suspected that Mrs. Maule could not read very well, and she understood she was re-conveying the property. She signed the deed and Burke testified that

he delivered the deed to John Maule, basing his testimony on his usual practice. The complainants introduced no evidence to show where the deed was kept or in whose custody it was after its execution until it was filed for record. Arthur Maule had testified that on one occasion he went through and examined the contents of his father's safety box with his father but did not see the deed. John Maule was a witness in his own behalf, and on cross-examination testified that he took the deed and put it in his safe, where he kept it until he gave it to his lawyer after his wife's death. When he was called as a witness objection was made that he was incompetent. The objection was properly overruled, for he was competent to testify in regard to matters which occurred after the death of his wife and to conversations which the complainants had testified to in which Sarah Maule made claim, in his presence, to own the property, and to such matters as had been testified to by witnesses not parties to the record nor parties in interest, relative to conversations or admissions made by him in the absence of his wife. The cross-examination was conducted without regard to the incompetency of the witness as to some things and brought them out in detail, particularly as to the location of the deed from the time of its execution until it was recorded. On cross-examination he testified that his wife signed the deed and gave it back to him and he put it in his safe at his house. When the trouble commenced he took it out and hired Tecklenburg, his lawyer, and the lawyer told him he ought to have it recorded. The cross-examination developed a difference between the testimony of the witness and that of Burke with relation to the place where the deed was prepared. Burke had testified that the deed had been written in his office. Maule testified that Burke wrote it after he went to Maule's home. It was typewritten and Burke's memory was probably correct. Maule testified that he deeded the property to his wife in 1894 because of some trouble with the mi-

ners.  They thought they were going to lose their home and thought it best to have the house turned over to his wife and after the thing was settled she was to return the house to him.  This was repeated on cross-examination, and he further said that the deed was given after everything was settled.

Regardless of any incompetent testimony given by Maule, there was nothing in the evidence which would have justified a decree granting relief on the theory that the deed was not delivered.  It was formally executed and was found in the possession of the grantee after the death of his wife, the grantor.  The question of delivery is one of intention.  Whether the parties, at the time of the transaction detailed by Burke, intended that the deed should then take effect according to its terms, whether it was delivered so as to take effect as a present conveyance of title, must be determined from the words and acts of the parties in connection with the circumstances attending the transaction.  (*Kavanaugh* v. *Kavanaugh*, 260 Ill. 179.)  Where a deed duly executed is found in the hands of the grantee the presumption of delivery arises, which can only be overcome by clear and convincing evidence.  *Wiggins* v. *Lusk*, 12 Ill. 132;  *Reed* v. *Douthit*, 62 id. 348;  *Griffin* v. *Griffin*, 125 id. 430;  *Dunlop* v. *Lamb*, 182 id. 319;  *Roche* v. *Roche*, 286 id. 336;  *Post* v. *Weaver*, 302 id. 169.

Disregarding Burke's testimony so far as it was based not upon memory but upon his usual practice, and disregarding Maule's testimony as to delivery, it still appears that Maule was in possession of the property and the deed after his wife's death and claimed ownership of the property by virtue of the deed.  The burden was therefore upon the appellants to show by clear and positive proof that the deed was not delivered.  To sustain this burden they showed statements of the grantor, assented to or not denied by the grantee, to the effect that the property was her property, was her home, was her homestead;  also the

deed in question, in addition to the lots here involved, conveyed other lots in the city of East St. Louis, and those lots Sarah Maule and her husband conveyed to J. F. Martin on March 9, 1906, and in 1911 a special assessment against the property involved in this suit appeared by the special assessment record of the city of Belleville to have been paid by Sarah Maule. This evidence does not constitute that clear and positive proof that the deed was not delivered which is required to overcome the presumption arising from the grantee's possession of the deed.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

---

(No. 15877.—Judgment affirmed.)
THE PEOPLE *ex rel.* Lial C. Pollock, County Collector, Plaintiff in Error, *vs.* THE EASTERN ILLINOIS AND ST. LOUIS RAILWAY COMPANY, Defendant in Error.

*Opinion filed April 14, 1924.*